IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **KENNETH TERELL WATKINS,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.  6:22-CV-00020-JDK** |
| | § | |
| **v.** | § | |
| | § | |
| **DIRECTOR, TDCJ-CID,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Kenneth Terell Watkins, an inmate confined in the Texas prison system, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2020 Smith County convictions. (Doc. No. 1.) The petition was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Upon review, for the reasons stated herein, the court recommends that the petition be denied and the case be dismissed with prejudice. The court further recommends that Petitioner be denied a certificate of appealability *sua sponte*.

### I. Procedural History

Petitioner was charged by indictment with evading arrest or detention with a vehicle in cause number 007-0006-20, unlawful possession of a firearm by a felon in cause number 007-1196-19, and bail jumping and failure to appear in cause number 007-1774-19 in the 114th Judicial District Court of Smith County, Texas. (Doc. Nos. 21-1, at 5–6; 21-10, at 5–6; 21-18, at 5–6.) On February 11, 2022, Petitioner pleaded guilty to the charges, and the court sentenced him to thirty

1

years for evading arrest or detention with a vehicle, twelve years for unlawful possession of a firearm by a felon, and five years for bail jumping and failure to appear, with sentences to run concurrently. (Doc. Nos. 21-1, at 7; 21-10, at 8; 21-18, at 8.) Petitioner did not appeal his convictions or sentences. (Doc. No. 1, at 3.)

Petitioner filed three state habeas applications challenging each of his convictions. On June 14, 2020, Petitioner filed a state habeas application challenging his conviction and sentence for bail jumping and failure to appear. (Doc. No. 21-18, at 23–35.) On June 15, 2020, Petitioner filed a state habeas application challenging his conviction and sentence for evading arrest or detention with a vehicle. (Doc. No. 21-1, at 18–33.) And on August 18, 2020, Petitioner filed a state habeas application challenging his conviction and sentence for unlawful possession of a firearm by a felon. (Doc. No. 21-10, at 17–32.) Petitioner filed supplemental state habeas applications for his convictions and sentences for bail jumping and for failure to appear on December 10, 2020, and possession of a firearm by a felon on December 17, 2020. (Doc. Nos. 21-13, at 4–20; 21-21, at 4–20.)

The Texas Court of Criminal Appeals ("CCA") twice remanded Petitioner's state application back to the trial court for an evidentiary hearing. (Doc. Nos. 21-3; 21-6; 21-12; 21-15; 21-20; 21-23.) The trial court found that there was no evidence to support Petitioner's allegations of ineffective assistance of counsel, his allegations concerning double jeopardy for costs imposed was not a cognizable habeas claim, and his allegations of improper enhancement had no merit, and therefore denied his application. (Doc. Nos. 21-2, at 35–44; 21-4, at 7–9; 21-7, at 29–30; 21-11, at 32–41; 21-19, at 34–43.) The CCA denied his application challenging his conviction and sentence for evading arrest or detention with a vehicle on on October 27, 2021, and denied his applications challenging his convictions and sentences for unlawful possession of a firearm by a felon and bail

jumping and for failure to appear on November 10, 2021 without written orders on the findings of the trial court without hearings and on the court's independent review of the record. (Doc. Nos. 21-8; 21-17.) There is no indication that he filed a writ of certiorari with the United States Supreme Court.

Petitioner filed his federal habeas petition on January 16, 2022. (Doc. No. 1, at 11.) *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (holding that for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system). In his federal petition, Petitioner alleges that:

(1)     Trial counsel provided ineffective assistance by failing to investigate any defenses or evidence;

(2)     Trial counsel provided ineffective assistance of counsel because he failed to object to the charging instruments use of the same paragraph for two separate charges;

(3)     Trial counsel provided ineffective assistance by failing to admonish Petitioner before coercing him to sign the plea deals;

(4)     His guilty pleas were involuntary because he was on prescription drugs for his mental health issues that affected his mood at the time of his guilty pleas;

(5)     He was denied due process and a fair trial because the trial judge was aware that a conflict of interest existed between Petitioner and his trial counsel;

(6)     He was denied due process and a fair trial because the trial judge never ordered a competency hearing;

(7)     He was denied due process and a fair trial because the trial judge used tactics to intimidate Petitioner; and

(8)     The trial court's decision was unreasonable because he did not receive an evidentiary hearing and the same judge who convicted and sentenced him also decided his habeas applications.

(Doc. Nos. 1, at 6–7; 1-1 at 9–23.)

Petitioner seeks to have his guilty pleas and sentences overturned. He also seeks a new trial. (Doc. No. 1, at 7.) Finally, he requests an evidentiary hearing to develop disputed facts. (Doc. No. 1-1, at 21, 25.)

## II. Respondent's Answer

Respondent filed an answer on May 6, 2022. (Doc. No. 20.) Respondent maintains that Petitioner's ineffective assistance claims are meritless because his guilty pleas were knowing and voluntary, and he fails to show that the state court's denial of his claims was unreasonable. *Id.* at 14–16, 31–32. Respondent asserts that Petitioner's allegations concerning the ineffective assistance of trial counsel are contradicted by the record. *Id.* at 18–30. Respondent also argues that Petitioner's claims concerning investigations, objections, and conflicts of interest were waived by his guilty plea. *Id.* at 17–18. Finally, Respondent argues that Plaintiff's claim that the state court erroneously denied him a hearing in his state writ proceedings fails to state a federal constitutional violation. *Id.* at 31.

## III. Petitioner's Response

Petitioner timely filed a response on June 3, 2022. (Doc. No. 26.) He maintains that trial counsel did not investigate anything in his case, including his mental health, and he had no fairness in the courtroom because counsel never informed him of his plea offers, the trial judge did not let him fire his lawyer, and the judge told him that a jury in Smith County would give him life. (Doc. No. 26, at 1.) Petitioner also submitted with his response (1) an annotated copy of the change of plea transcript to show that trial counsel was ineffective; (2) medical records while incarcerated, showing he had a history of mental health treatment; (3) the affidavit from trial counsel in the state court proceedings responding to Petitioner's habeas claims; (4) his guilty plea paperwork and

judgments; (5) the state's answer in the state court habeas proceedings; and (6) the state court's order denying his habeas application. (Doc. No. 26-1, at 4, 6–9, 12–44–49, 50–53, 55–57.)

## IV. Standard of Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'"). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review errors under state law. *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Pub. L. 104-132, 110 Stat. 1214. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201–02 (5th Cir. 2016) ("Federal habeas review under AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result.  Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim.").  Given the high deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

## V. Discussion and Analysis

### 1. Involuntary Guilty Pleas

At the heart of Petitioner's habeas petition is that his guilty pleas were involuntary. (Doc. No. 1, at 6–7.) Specifically, Petitioner claims he did not receive effective assistance of counsel because his attorney did not inform about plea offers, failed to admonish him before he signed his plea agreements, and coerced him into pleading guilty. (Doc. No. 1-1, at 18–19, 24–25.) Petitioner also contends that his guilty pleas were involuntary because he was on prescription drugs that affected his mood at the time he entered the plea, and the court did not order a competency hearing. *Id.* at 16–17. He next argues that the trial judge prevented him from firing his attorney for ineffective assistance of counsel based on counsel's failure to inform him about his plea offers, denying him due process and resulting in involuntary guilty pleas. (Doc. Nos. 1-1, at 15–16; 26, at 1.) Finally, Petitioner argues that his guilty pleas were involuntary because the trial judge used tactics to intimidate him into pleading guilty. (Doc. No. 1-1, at 8–9.)

Respondent argues that Petitioner's claims are meritless, contradicted by the record, and fail to overcome the AEDPA's deferential standard of review. (Doc. No. 20, at 14–16, 18–29, 32.) Respondent points to the fact that when reviewing his state habeas application, the state habeas court found that his attorney did not provide ineffective assistance of counsel. *Id*. at 18–19. Respondent also argues that the record supports the finding that his guilty pleas were knowing, intelligent, and voluntary. *Id*. at 14–16. Next, Respondent asserts that Petitioner's claims that counsel provided ineffective assistance because he failed to investigate certain defenses or make specific objections were waived by Petitioner's guilty pleas. *Id*. at 17–18.

Applying the deferential standard set out in Section 2254(d), the court first looks to the state court proceedings and findings. The court notes that the ineffective assistance of counsel claims regarding trial counsel were fully developed during the state habeas corpus proceedings. In the state court habeas proceedings, Petitioner's trial attorney, Mr. O.W. Loyd, III, provided two affidavits responding to the claims. In Mr. Loyd's first affidavit he avowed:

> I was requested to provide information with regard to writ filed with the Court of Criminal Appeals of Texas on behalf of KENNETH WATKINS.
>
> I was appointed to represent the defendant, by the court of the 7th District, Smith County, in 2019, and trial was had in his cause in early March of 2020.
>
> Having reviewed the writ, and all associated materials available, it seems that the assertions contained in the 'Grounds' of Applicants' writ require response by Counsel. Therein, the description is that counsel performed no, or inadequate, investigation prior to trial and that Applicant received ineffective assistance of Counsel.
>
> Curiously, at no time during the course of my representation, was I aware that Mr. Watkins' psychological issues, if any, although I do recall having discussions with him about the case itself, his involvement with the case, and his medications, if any, and his desires regarding final resolutions.
>
> Further, I have thoroughly read through the provided paperwork, and it seems that the ultimate complaint is that the defendant received a sentence that he thought was excessive, although agreed upon by virtue of the plea bargain. The

complaint, therefore, is that counsel was unable to negotiate the desired sentence; not that the representation was inadequate.

I have no recollection, nor do I have any reason to believe today, that Watkins, is now incompetent, or was suffering from the same at the time of trial. Our discussions were fruitful during the initial portions of my involvement with this defendant, and continued to be so thereafter. Just as I have stated, Watkins seemingly now complains that he has addiction or psychiatric problems, and that I should have known that by virtue of the fact that he had been treated for any disorders.

I have no knowledge of, nor did I see any record of, additional medications or doctor visits during the time prior to trial. Throughout the plea, he exhibited no outward non-compliant behaviors, whether aggressive or confused. He answered all questions appropriately and affirmed his understanding of all.

Today, I have the benefit of hindsight, and subsequent case law. Having said that, I have tried to recollect the conversations I had with the defendant. My recollection is that the defendant desired a sentence in the range of single digit to 10 years, with no questions regarding prior convictions or any enhancements.

Fully reviewing the documents provided, it would seem that I see no complaints of failure to call others in his description of my failure to investigate the case prior to trial.

In short, the defendant seems only to complain in the ultimate outcome of the trial, and not of inadequate representation. The State agreed to allow for the waiver of a jury, as requested by the defendant. That may have been some additional consideration with regard to the 'anxiety' issues the defendant was or had exhibited, but the court approved the same. That aspect was fully explained to him as well, even though there is no complaint found here now.

There is nothing in my memory nor in my review, or discussions, that stand out to lead me to believe that Watkins received ineffective assistance of counsel. Further, I have spoken with an appeal counsel, fully discussed the same with him, and do not see anything inadequate there, although I have no real knowledge of his strategy regarding case. My discussions revolved around the facts of the case in an attempt to bring back any memories I may have had, and for no other reason[.]

(Doc. Nos. 21-2, at 3–6; 21-11, at 13–16; 21-19, at 13–16.)

In Mr. Loyd's second affidavit, later supplemented, he avowed:

Having reviewed the writ, and all associated material, it appears that the defendant enter pleas pursuant to plea bargains, and paperwork was executed, including waivers of appeal. Therefore, having waived the same, counsel was not deficient in failing to perfect an appeal, as we had already given the trial court

notice, in writing, of our waiver of the same regarding appellate issues at the sentencing and plea hearing.

Curiously, another notation indicates that counsel 'threatened, the defendant with the stacking of sentences, although all cases and pleas were had on the same date. Nothing could be further from the truth. In reviewing the cases, note that at least two cases have different offense dates, and, therefore, could have been 'stacked', although that was never threatened or even talked of by any party. During any consultation regarding trial preparations, it is common for counsel to give proper admonishments regarding plea bargains verses trials before a jury. Certainly, this would include such an admonishment when there are three charges with differing dates alleged and not continuing course of conduct.

Further, I have reviewed notes made throughout the file and have no recollection of need to threaten this defendant. I am offended by such an accusation, although am aware that this could have been heard by many a trial court. Never has such an event been had, however, which even involved this counsel's participation. In short, it never happened, did not threaten this defendant, and have no idea of how proper admonishments even become threatening, and further end in plea bargain agreement in all of his cases, wherein waivers of appeal are included as part thereof, and accepted by the court.

Additionally, should further clarification be necessary, Watkin indicated that he was denied his right to perfect an appeal on his cases. As previously noted, within his plea bargain agreement, agreed to by the defendant and counsel, the defendant waived appeal and the trial court allowed and accepted the waiver. Watkins [sic] understood the Waiver, the same having been explained by counsel, and he was further admonished by the court as to the significance of this document[.]

(Doc. No. 27-7, at 14–16, 21–24.)

After reviewing the record and affidavits of trial counsel, the state habeas court found that there was no credible evidence that supported Petitioner's claims of ineffective assistance of counsel or that he suffered a prejudice therefrom. (Doc. Nos. 21-2, at 41; 21-4, at 7–9; 21-7, at 29–30; 21-11, at 38; 21-19, at 40.) The court found that the record, including counsel's affidavits, reflected that Mr. Loyd properly and conscientiously investigated the case and provided effective assistance of counsel. (Doc. Nos. 21-2, at 41; 21-4, at 7–9; 21-7, at 29–30; 21-11, at 38; 21-19, at 40.) The court also found that the record also supported Petitioner's guilty pleas. (Doc. Nos. 21-2, at 41; 21-11, at 38; 21-19, at 41.)  The CCA subsequently denied Petitioner's habeas applications

without written orders and without hearings based upon the findings of the trial court, and its own independent review of the record. (Doc. Nos. 21-8; 21-17.)

A guilty plea will be upheld on habeas review if the plea was entered into knowingly, voluntarily, and intelligently. *See Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). Whether a plea is knowing turns on whether the defendant understood the consequences of his plea; the defendant must have a full understanding of "what the plea connotes and of its consequence." *Hernandez*, 234 F.3d at 255. If a criminal defendant understood the charge against him and the potential punishment for the offense charged—and voluntarily pleaded guilty—then the plea will be upheld. *See James v. Cain*, 56 F.3d 662, 666–67 (5th Cir. 1995).

With respect to voluntariness, the question becomes whether the plea was induced by threats or improper promises. *Montoya*, 226 F.3d at 405; *see also U.S. v. Nunez*, 539 F. App'x 502, 503 (5th Cir. 2013) ("Whether a plea is knowing looks to whether the defendant understands the direct consequences of his plea, while voluntariness looks to, inter alia, whether the plea was induced by threats or improper promises."). The Supreme Court has explained:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970).

Moreover, firm declarations in open court, including a plea colloquy, carry a strong presumption of verity. *See United States v. Perez*, 690 F. App'x 191, 192 (5th Cir. 2017) (per curiam) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the petitioner faces the heavy

burden of proving that he is entitled to relief through overcoming the evidence of his own words. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (holding that in order to be entitled to an evidentiary hearing on a claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person.").

Petitioner first argues that his guilty pleas were involuntary because he was not properly admonished by trial counsel before signing his plea agreements. (Doc. No. 1-1, at 14.) Petitioner contends that he did not know about his plea offers until his change of plea hearing and was not made fully aware of the terms until after he signed his plea agreements. *Id.* at 15.

Petitioner's claim is not supported by the record. Although it is true that trial counsel has a duty to communicate formal plea offers to the defendant, *see Missouri v. Frye*, 566 U.S. 134, 145 (2012), here, there is no evidence that trial counsel failed to inform Petitioner about his plea offers. On February 10, 2020, Petitioner signed his plea agreements and appeared in trial court to formally enter his guilty pleas. (Doc. Nos. 21-1, at 7; 21-4, at 19; 21-10, at 8; 21-18, at 8.) At his change of plea hearing, the trial court inquired why Petitioner had signed the plea agreements but was unwilling to swear them to the district clerk. (Doc. No. 21-4, at 19.) Trial counsel informed the court that Petitioner was still trying to negotiate. *Id.* The state informed the court that it offered him 30 years on his evading arrest or detention with a vehicle charge several weeks prior, and it was unwilling to negotiate further. *Id.* at 20. Petitioner then told the court that his attorney did not inform him of the offer several weeks prior. *Id.* at 20–21. Petitioner contended that he just learned

of the plea offer, while trial counsel asserted that he informed Petitioner about the offer the week prior. *Id.* at 21–22. The court ultimately recessed for the day, and Petitioner entered his guilty pleas the following day. (Doc. Nos. 21-2, at 50; 21-4, at 26–27.)

The record reflects that Petitioner and his trial counsel disputed *when* counsel informed Petitioner about the plea offer, not *whether* counsel informed him about the plea offer. The fact of the matter remains, trial counsel informed Petitioner about the plea offers before the hearing on February 10, 2020, and Petitioner signed his plea agreements. Moreover, trial counsel avowed that he admonished Petitioner about the consequences of entering into his plea agreements. (Doc. No. 27-7, at 14–16, 21–24.) Petitioner has presented no evidence that counsel failed to admonish him beyond his own statements. Judicial scrutiny of counsel's assistance must be "highly deferential," and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). A court must employ a strong presumption that counsel's conduct falls within a wide range of reasonably professional assistance. *Id.* "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983). Petitioner has not shown that counsel failed to inform him of plea offers nor failed to admonish him before he entered his plea agreements.

Petitioner next argues that his guilty pleas were involuntary because he was not competent when he entered his guilty pleas because he was taking medication for his mental health, and the court should have ordered a competency hearing. (Doc. No. 1-1, at 16–17.)

Petitioner's claim is not supported by the record. At the second change of plea hearing on February 11, 2020, the trial court inquired whether he had taken any medications that day, and

Petitioner informed the court that he took "psych meds." (Doc. No. 21-2, at 75.) Petitioner testified that he had been taking two medications since age nine but did not know the names of them. *Id.* 75–76. Trial counsel informed the court that he knew the names of one of the medications but could not recall the name of the other medication. *Id.* at 77. Counsel also informed the court that he was aware that Petitioner had been treated for bipolar disorder. *Id.* Petitioner informed the court that he was clear headed and understood everything he had discussed with his trial counsel so far. *Id.* at 77–78. In response to the court's inquiry whether he could read, Petitioner testified that he could not read well, but trial counsel explained anything that he was unable to read or understand. *Id.* at 78–79. Petitioner further informed the court that he was being treated as an outpatient for his mental health issues. *Id.* at 80–81. Trial counsel testified that he was satisfied that Petitioner was competent to stand trial and understood his legal rights, the consequences of waiving those rights, and the consequences of entering a guilty plea. *Id.* at 83–84. He further testified that Petitioner had helped with preparation of the case. *Id.* at 84. Counsel stated that he was initially concerned when Petitioner informed him of his psychological issues and, after consulting with him to ensure that he was receiving proper medication, counsel was confident that he was getting the necessary treatment and had been competent throughout his interactions with him. *Id.* at 84. The court then found that given his understanding of the charges, plea agreements, and his ability to converse with trial counsel, Petitioner was competent to stand trial. *Id.* at 90.

Petitioner contends that in trial counsel's affidavit in the state habeas proceedings he admitted that he was not aware of Petitioner's psychological issues. (Doc. No. 1-1, at 16–17.) Mr. Loyd avowed "[c]uriously, at no time during the course of my representation, was I aware [of] Mr. Watkins' psychological issues, if any, although I do recall having discussions with him about the case itself, his involvement with the case, and his medications, if any, and his desires regarding

final resolutions." (Doc. No. 21-2, at 102–03.) Although somewhat confusing, Mr. Loyd's statement does not indicate that Petitioner was incompetent at the time he entered his guilty pleas, nor does it reflect that he ineffectively counseled Petitioner. The record shows that Petitioner was actively involved in his case and discussed his medications with trial counsel. Petitioner testified that he was clear headed, and counsel testified that he had no concerns about Petitioner's competency. Indeed, Petitioner testified at his change of plea hearing that he had been taking medications to treat his psychological issues since he was a child, and that he was taking them at the time of his change of plea hearing. Meanwhile, in his state habeas applications he alleged that his psychological issues were untreated at the time of his guilty pleas, making him incompetent and resulting in involuntary guilty pleas. (Doc. Nos. 21-1, at 23–24; 21-10, at 24.) In his federal petition, Petitioner asserts that he was taking psychological medications at the time of his guilty pleas that affected his mood and made his guilty pleas involuntary. (Doc. No. 1, at 7.) These arguments are belied by the record where Petitioner testified that he was clear headed and had been taking his medications for over 20 years. Petitioner has presented no evidence to overcome the presumption of verity afforded his declarations in open court, and as such, this argument fails. *See United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) ("It is well established that '[s]olemn declarations in open court carry a strong presumption of verity.'").

Petitioner further argues that his guilty pleas were involuntary because he tried to fire his trial counsel for ineffective assistance, but the court refused to allow it. (Doc. Nos. 1-1, at 15–16; 26, at 1.) At the first change of plea hearing on February 10, 2020, when the trial court asked Petitioner whether he would like to enter the guilty pleas, he responded, "I would like to try and file --- (inaudible) --- counsel." (Doc. No. 20-4, at 9.) The court informed Petitioner that he could

file it later, but it was not an issue for the court to take up now. *Id.* Petitioner maintains that this was an effort to fire his trial counsel, but the court prevented it.

At the second change of plea hearing the following day, Petitioner testified that he was satisfied with trial counsel's representation and had no complaints to support a future claim for ineffective assistance of counsel. (Doc. No. 21-2, at 68–71.) The court admonished him, and Petitioner testified that he understood all of his rights and consequences of his guilty pleas. *Id.* at 72–74. He also testified that he understood the charges, had an opportunity to discuss the agreements with his attorney, understood everything in the agreements, and willingly signed the plea agreements. *Id.* at 85–86, 88–89. Petitioner testified that he voluntarily entered his plea agreements without coercion, and, after this colloquy, the court found that his guilty pleas were knowing, intelligent, and voluntary. *Id.* at 88–90.

Petitioner maintained the right to fire his trial counsel after the February 10, 2020, hearing but did not do so. Instead, he showed up the following day and entered his guilty pleas after testifying that he had no qualms with trial counsel's representation and informed the court that he was voluntarily pleading guilty. These declarations in open court directly before he pleaded guilty carry a strong presumption of verity, and Petitioner fails to overcome that presumption with his bald assertions after the fact. *See Blackledge*, 431 U.S. at 74.

Finally, Petitioner argues that his guilty pleas were involuntary because the trial judge and counsel used tactics to intimidate Petitioner into pleading guilty. (Doc. Nos. 1, at 8; 1-1, at 8–9, 24–25.) Petitioner contends that the trial judge told him that a Smith County jury would sentence him to life if he went to trial. (Doc. No. 1-1, at 8–9.)

At his second change of plea hearing on February 11, 2020, the trial judge explained to Petitioner that he did not care whether he pleaded guilty or proceeded to trial, but he wanted to

ensure that Petitioner did what he wanted to do. (Doc. No. 21-2, at 51–54, 59.) The trial court discussed the charges, potential sentences, types of evidence needed to prove those charges beyond a reasonable doubt, and likelihood of success in front of a jury if the state presented that evidence. *Id.* at 54–59. The court maintained that it did not know the specific facts of Petitioner's case nor whether the state had this evidence, but acknowledged that these charges are common and that the state is often good at supplying evidence to support its charges. *Id.* at 57–58. In so discussing, the trial court mentioned that Petitioner's charge for evading arrest or detention with a vehicle was eligible for a life sentence. *Id.* at 66–67. The trial judge then said that he believed a Smith County jury would likely give him life if the state produced sufficient evidence for the charge because people around the world were tired of crime. *Id.* at 58–59, 66–67. The trial court repeatedly assured Petitioner that it did not care if Petitioner chose to plead guilty or to proceed with trial on the charges. *Id.* at 52–54, 59, 65–67.

The record reflects that the trial court was concerned with providing Petitioner information to make an informed decision, not coercing him to enter guilty pleas as reflected by its repeated assurances that the choice whether to plead guilty was Petitioner's choice to make. Petitioner also testified that his decision to plead guilty to the charges was his alone, and no one forced or coerced him to plead guilty, refuting his claim that the court and trial counsel coerced him to plead guilty. *Id.* at 87–88. Petitioner's self-serving statements in his habeas petition are insufficient to overcome the presumption of verity of his colloquy. *See Blackledge*, 431 U.S. at 74.

Petitioner contends that the state court's habeas denial of his claims was unreasonable because the same judge that accepted his guilty pleas denied his habeas applications. (Doc. No. 1-1, at 20.) But this bolsters the presumption that the state court's habeas decision was correct, as the trial judge was present for the change of plea hearing and was able to assess his competency, trial

counsel's effectiveness, and whether his pleas were knowing, intelligent, and voluntary. *See Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000) (noting that state court's "factual findings are entitled to a presumption of correctness, *especially* whereas here the trial judge and state habeas judge were the same" (emphasis added)). Petitioner has therefore failed to show that the state court's denial of his habeas claims was unreasonable.

After reviewing the trial court documents, the state habeas court record, and the relevant filings in this case, the court finds that the state trial court's acceptance of Petitioner's guilty pleas reflects a reasonable application of Supreme Court precedent and was reasonable in light of the record of the state court proceedings. Petitioner has failed to show that his guilty pleas were involuntary. The record demonstrates that Petitioner pleaded guilty after being informed of consequences of his guilty pleas and confirming that he understood both the charges against him and the ranges of punishment. He stated in court, under oath, that he was pleading guilty freely and voluntarily.

Petitioner cannot overcome the evidence of his own sworn words. While he now argues that he was coerced into pleading guilty, his own sworn words and the mere contradiction of those words do not show that his pleas were coerced or unwilling. His claim that he was coerced into pleading guilty is belied by the record—and he has not presented any independent indicia of the likely merit of his contentions that his plea was involuntary. *See, e.g.*, *Rhynes v. Lumpkin*, No. H-20-751, 2021 WL 536441, at *3 (S.D. Tex. Jan. 19, 2021) ("Transcripts show that the court explicitly informed Rhynes of the maximum prison term and fine for the offenses. Nothing in the record indicates that Rhynes's guilty plea was involuntary." (internal citation omitted)). The court therefore finds that Petitioner's claims that his guilty pleas were involuntary are without merit.

   2.  Counsel Failed to Investigate Defenses and Object to the Indictment

17

Petitioner's first and second claims allege that Petitioner's trial counsel rendered ineffective assistance by failing to investigate any evidence or defenses or make specific objections. (Doc. No. 1-1, at 13–14.) Petitioner contends that counsel failed to investigate Petitioner's psychological issues and his competency should have been evaluated. *Id.* at 14. He also challenges counsel's failure to object to the use of the same paragraph twice in the indictment. *Id.* at 23. As Respondent contends, these claims were waived by Petitioner's guilty pleas. (Doc. No. 20, at 17–18.)

The Fifth Circuit has repeatedly held that a voluntary and unconditional guilty plea waives all non-jurisdictional defects, including ineffective assistance of counsel claims, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008); *United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007), *cert. denied*, 552 U.S. 936 (2007); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986), *cert. denied*, 479 U.S. 1039 (1987) (noting that a voluntary guilty plea waives all non-jurisdictional defects, including claims that trial counsel was ineffective). To succeed on an ineffective assistance of counsel claim after a guilty plea, a petitioner must show that his plea was unknowing or involuntary. *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (citing *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)).  However, as discussed above, Petitioner has not shown that his pleas were unknowing or involuntary. Thus, Petitioner's grounds for relief concerning his attorney's alleged ineffective assistance of counsel for failing to investigate or make specific objections were waived by his voluntary and unconditional guilty pleas and are insufficient to warrant habeas relief.

For the reasons stated above, the court recommends that Petitioner's involuntary guilty pleas and ineffective assistance of counsel claims be denied.

2. Evidentiary Hearing

Petitioner contends that he was entitled to a hearing in state court to develop the facts because even the state admitted there was a need for an evidentiary hearing. (Doc. No. 1-1, at 21.) He argues that the state court's failure to hold an evidentiary hearing resulted in an unreasonable determination of the facts. *Id.* But Petitioner's claim that he was entitled to a hearing in state court does not state a federal constitutional claim, and thus cannot form the basis for federal habeas relief. *Tijerina v. Estelle*, 692 F.2d 3, 6 n.2 (5th Cir. 1982); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Moreover, to resolve factual disputes in state habeas proceedings, the convicting court may order "affidavits, depositions, interrogatories, additional forensic testing, and hearings, as well as using personal recollection." Tex. Code Crim. Proc. art. 11.07(3)(d).  Thus, if there were factual disputes below, the state court could decide them without an evidentiary hearing on counsel's affidavits alone, as here.

Petitioner also requests a federal evidentiary hearing "to resolve certain factual disputes concerning his counsel's performance. (Doc. No. 1-1, at 25.) However, an evidentiary hearing is not warranted in this case. *Young v. Herring*, 938 F.2d 543, 560 (5th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing . . . if his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'"(citation omitted)). Petitioner has not presented any "independent indicia of the likely merit of [his] allegations" through evidence contradicting the record. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). As such, no hearing is necessary.

## VI. Conclusion

Petitioner has failed to show that the state court's adjudication of his claims was unreasonable or contrary to federal law, as determined by the United States Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Furthermore, his claims are waived by his guilty pleas or are otherwise meritless. Accordingly, his federal habeas petition should be denied, and the case should be dismissed with prejudice.

## VII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (finding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court emphasized that the COA inquiry "is not coextensive with a merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 580 U.S. at 115 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must

further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012)).

Here, Petitioner failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He has also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a COA.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's writ of habeas corpus be denied, and the case dismissed with prejudice.  It is further recommended that Petitioner be denied a certificate of appeal *sua sponte*.

Within fourteen days after service of the Magistrate Judge's Report, any party must serve and file specific written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 23rd day of August, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE